UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

| | |
|---|---|
| CHIPOTLE MEXICAN GRILL, INC., | ) Case No. _____ |
| Plaintiff, | ) |
| | ) Judge _____ |
| v. | ) |
| | ) **PLAINTIFF'S ORIGINAL COMPLAINT** |
| JOHN CHEVEDDEN, JAMES McRITCHIE, and MYRA K. YOUNG, | ) |
| Defendants. | ) |

Plaintiff Chipotle Mexican Grill, Inc. ("Chipotle"), by and through counsel Messner Reeves LLP, hereby files this complaint for declaratory judgment against Defendants John Chevedden ("Chevedden"), James McRitchie ("McRitchie") and Myra K. Young ("Young"). Chipotle seeks a judgment declaring that it is permitted to exclude Chevedden's shareholder proposal ("Proposal") from its proxy statement.

## SUMMARY OF THE ACTION

1. Rule 14a-8 of the Securities Exchange Act of 1934, as amended ("Rule 14a-8"), governs the submission of shareholder proposals for inclusion in a company's proxy statement and the bases on which companies may properly exclude such proposals. *See* 17 C.F.R. § 240.14a-8. Because Chevedden's Proposal falls within the express grounds on which proposals may be excluded under Rule 14a-8, and because Defendants have not otherwise complied with Rule 14a-8, the Proposal may be excluded from Chipotle's proxy statement.

2. Chipotle must draft, finalize, and mail to shareholders its proxy statement in advance of its annual meeting scheduled for May 15, 2014. These timing and logistical constraints cause Chipotle to seek a declaration from this Court as soon as is practicable that the Proposal may be excluded from its proxy statement.

## PARTIES

3. Chipotle is a Delaware corporation with its principal place of business in Denver, Colorado.

4. Defendant Chevedden is an individual residing in Redondo Beach, California, and may be served with process and a copy of this complaint at John.

5. Defendant McRitchie is an individual residing in Elk Grove, California, and may be served with process and a copy of this complaint at 9295 Yorkship Court, Elk Grove, CA 95758.

6. Defendant Young is an individual residing in Elk Grove, California, and may be served with process and a copy of this complaint at 9295 Yorkship Court, Elk Grove, CA 95758.

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331. This Court also has diversity jurisdiction over this matter under 28 U.S.C. § 1332 because there is complete diversity between Plaintiff and Defendants. Additionally, this Court has jurisdiction over this matter under § 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, because the acts or transactions complained of may be enforced in this district, and because Defendants have transacted business in this district with respect to the matters at issue in this lawsuit.

8. This Court has the power to grant declaratory relief under 28 U.S.C. § 2201. There is an actual controversy between Chipotle and Defendants. Defendant Chevedden, purportedly on behalf of and with the collaboration of Defendants McRitchie and Young, has sought the inclusion of a proposal in Chipotle's proxy statement for its upcoming annual meeting of stockholders, even though the Proposal is properly excluded according to the express text of Rule 14a-8, and Defendants have failed to comply with numerous requirements of the applicable proxy rules, including failing to provide the required proof of ownership that is a prerequisite to including a proposal in a proxy statement.

9. Personal jurisdiction and venue are proper in this district because Chipotle maintains its principal place of business in Colorado and Defendants directly, intentionally, and repeatedly have transacted business in this district that is central to the issues in this lawsuit. Defendant Chevedden, purportedly on behalf of and with the collaboration of Defendants McRitchie and Young, sent numerous letters and e-mails to Chipotle in this district seeking to influence how Chipotle conducts business in this district. Defendant Chevedden, purportedly on behalf of the other Defendants, seeks consideration of his Proposal at Chipotle's next annual shareholder meeting scheduled for May 15, 2014, which will be held in this district. Defendants have therefore sought to influence how Chipotle conducts its business in this district despite failing to comply with the applicable proxy rules or demonstrating the requisite ownership of Chipotle shares. A substantial part of the events giving rise to, and at issue in, this lawsuit occurred in this district.

**FACTS**

10.     Chipotle operates over 1,500 Mexican fast-casual restaurants throughout the United States. Chipotle's common stock is traded on the New York Stock Exchange.

11.     Defendant Chevedden does not appear to own a single share of Chipotle stock.

12.     Chevedden does, however, submit more shareholder proposals to U.S. corporations than anyone in history. In one recent 10-year period, for example, Defendant Chevedden accounted for 879 proposals considered by the staff of the U.S. Securities and Exchange Commission ("SEC") in no-action letters, while *everyone else in the world* accounted for 6,958 such proposals. In other words, over the course of a decade, Defendant Chevedden—by himself—managed to account for more than 11 percent of the SEC's total no action letters on shareholder proposals. No other shareholder (whether an individual or an institution) even comes close to this volume, or the burden it imposes on the companies required to consider, evaluate and, where appropriate (as here), seek to exclude such shareholder proposals.

13.     Despite—or perhaps because of—the sheer volume of Chevedden's shareholder proposals, he frequently fails to comply with the express requirements for such proposals, as set forth in Rule 14a-8, and, as a result, his proposals are routinely excluded from companies' proxy statements. As one company, Intel Corp., explained to the SEC in excluding one of Chevedden's proposals: "Mr. Chevedden and his tactics are well-known in the stockholder proposal community. . . . [W]e are unaware of any other proponent who operates in such a manner, or on so widespread a basis, in disregarding the Commission's stockholder proposal rules." *Intel*

*Corp.*, *SEC No-Action Letter (2004-2011)*, Fed. Sec. L. Rep. (CCH) ¶ 76,074, Letter from R. Mueller to SEC Div. of Corp. Fin. at 3 (Mar. 13, 2009).[1]

14. On November 6, 2013, Chipotle received an e-mail from Chevedden, with an attached letter from McRitchie and Young, regarding the inclusion of Chevedden's Proposal in Chipotle's proxy statement for its 2014 annual meeting of shareholders ("Annual Meeting").

15. Chevedden's Proposal—which he attempts to submit based on the purported ownership of Chipotle shares by Defendants McRitchie and Young—disregards the SEC's shareholder proposal rules and failed to comply with necessary procedural requirements.

    **A.    The November 6, 2013 Proposal May Be Excluded From Chipotle's Proxy Materials Pursuant to Rule 14a-8.**

16. The November 6, 2013 Proposal has at least four deficiencies, each of which independently warrants its exclusion from Chipotle's proxy materials.

        **1.    Chevedden Has Not Satisfied the Ownership Requirements of Rule 14a-8(b).**

17. Rule 14a-8(b) sets forth the ownership requirements for shareholder proposals. According to Rule 14a-8(b), "to be eligible to submit a proposal, you must have continuously held at least $2,000 in market value, or 1%, of the company's securities entitled to be voted on the proposal at the meeting for at least one year by the date you submit the proposal. You must continue to hold those securities through the date of the meeting."

18. On November 14, 2013, Chipotle sent to Defendants a letter noting the deficiencies in Chevedden's Proposal ("First Deficiency Notice").

19. As stated in the First Deficiency Notice, it was unclear from the materials originally submitted by Defendants whether McRitchie, Young, or Chevedden, or some

---

[1] SEC no-action letters regarding shareholder proposals pursuant to Rule 14a-8 since 2007 are available at http://www.sec.gov/divisions/corpfin/cf-noaction/14a-8.shtml.

{01184692 / 1}        5

combination of the three, are shareholders of Chipotle's stock sufficient for eligibility to submit a shareholder proposal for inclusion in Chipotle proxy materials. Chipotle also stated that neither McRitchie, Young, nor Chevedden filed a Schedule 13D, Schedule 13G, or Form 3 evidencing beneficial ownership of shares of Chipotle's stock.

20. The First Deficiency Notice then explained to Defendants that "under Rule 14a-8(b)(2), you must provide a written statement from the record holder of shares that one or more of you beneficially own in 'street name' that the relevant holder held a sufficient number of shares for at least one year in order to prove your eligibility to submit your proposal."

21. The First Deficiency Notice also explained that, unless this deficiency was corrected, Chevedden's Proposal would be excluded from Chipotle's proxy statement:

> In light of the foregoing, the Company has determined that you have failed to comply with the requirements of Rule 14a-8(b)(2) concerning proof of eligibility to submit a proposal, and that you are therefore not eligible to submit the Shareholder Proposal or any other proposal.
> . . .
> Any response to this notification must be postmarked, or transmitted electronically, no later than fourteen calendar days from the date you receive this notification. Any such response should address the issues set forth in this letter so as to prove that one or more of you holds the requisite amount of Company securities sufficient to make you eligible to submit a proposal. If within the required fourteen calendar day period, you do not respond to the Company in writing as to the foregoing, we believe the Company will be entitled to exclude the Shareholder Proposal from the Company's proxy statement for the Annual Meeting.

22. In response to the First Deficiency Notice, Chevedden sent to Chipotle a letter from TD Ameritrade to McRitchie and Young stating that McRitchie continuously has held 10 shares of Chipotle's common stock since October 10, 2012.

23. On November 27, 2013, Chipotle sent to Chevedden another letter again addressing deficiencies in Chevedden's Proposal ("Second Deficiency Notice"). Chipotle stated

that "documentation of share ownership by Mr. McRitchie or anyone else other than yourself appears to be insufficient to establish *your* eligibility to submit the proposal under Rule 14a-8."

24. The Second Deficiency Notice then explained that Chipotle "has determined that you continue to fail to comply with the requirements of Rule 14a-8(b)(2) concerning proof of eligibility to submit a proposal, and that you are therefore not eligible to submit the Shareholder Proposal or any other proposal."

25. To date, Chevedden has not provided adequate proof of ownership of Chipotle stock under Rule 14a-8(b).

26. Therefore, Chipotle is entitled to a declaratory judgment that it may exclude the November 6, 2013 Proposal from its proxy statement.

### 2. Rule 14a-8 Does Not Permit Shareholders to Make "Proxy Proposals By Proxy," as Attempted Here.

27. Rule 14a-8(h) requires that a shareholder personally appear at the shareholders' meeting to present his or her proposal, or designate a "representative . . . to present a proposal on your [the shareholder's] behalf." Section (h) is the only section of Rule 14a-8 that allows a shareholder to appoint a representative to act on his or her behalf, and it is only for the limited purpose of presenting the shareholder's proposal at the shareholders' meeting. The rule does not contain *any* language permitting a shareholder to grant a proxy to another person in advance of the shareholders' meeting in order for that other person to submit a shareholder proposal for inclusion in a company's proxy statement.

28. Nevertheless, that is what Defendants try to do here. Defendants McRitchie and Young attempt in their letter attached to Chevedden's November 6, 2013 e-mail to give their proxy for Chevedden and/or his designee to submit the Proposal and to act on their behalf regarding the Proposal. This so-called "proxy" would permit Chevedden to designate yet

another, unidentified person—including persons unknown to McRitchie or Young—to advance proposals to Chipotle on McRitchie's and Young's behalf. Nothing in Rule 14a-8 contemplates this sort of "proxy proposal by proxy" scheme.

29. In the First Deficiency Notice, Chipotle alerted Defendants of this deficiency by expressly requesting that Chevedden provide proof of share ownership and noting that it is entirely unclear who, if any, of the Defendants was an actual Chipotle shareholder.

30. Further, in the Second Deficiency Notice, Chipotle expressly stated that:

> In light of your submission to the Company of the Shareholder Proposal (as opposed to submission by Mr. McRitchie), documentation of share ownership by Mr. McRitchie or anyone else other than yourself appears to be insufficient to establish your eligibility to submit the proposal under Rule 14a-8. In this regard we note that, as you are aware from the ruling of the United States District Court for the Southern District of Texas in Waste Connections, Inc. v. John Chevedden, James McRitchie and Myra K. Young (Civil Action 4:13-CV-00176-KPE) ("Waste Connections"), Rule 14a-8 does not permit a shareholder to grant a proxy to another to submit a shareholder proposal. Accordingly, because you, and not Mr. McRitchie, submitted the Shareholder Proposal, such proposal will only be properly submitted under Rule 14a-8 if you yourself meet the share ownership and eligibility verification requirements of Rule 14a-8(b).
>
> In light of the foregoing, the Company has determined that you continue to fail to comply with the requirements of Rule 14a-8(b)(2) concerning proof of eligibility to submit a proposal, and that you are therefore not eligible to submit the Shareholder Proposal or any other proposal.

31. To date, Chevedden has not remedied the deficiencies stated in the First Deficiency Notice or Second Deficiency Notice.

32. It is clear that Chevedden is the true proponent of the proposal because a substantially identical form of "proxy" was granted to Chevedden by at least one other shareholder. The use of this substantially identical form of proxy by multiple shareholders,

where the only apparent common thread is Chevedden's involvement, seems to underscore that it is Chevedden that is truly driving these proposals and that the involvement of the eligible shareholders is merely a sham to allow Chevedden to make proposals at companies to which he himself is ineligible to submit.

33. Therefore, Chipotle is entitled to a declaratory judgment that it may exclude the Proposal from its proxy statement.

### 3. Rule 14a-8(i)(3)-The Proposal is Impermissibly Vague and Indefinite So As To Be Inherently False and Misleading in Violation of Rule 14a-9

34. Rule 14a-8(i)(3) permits exclusion of a shareholder proposal if the proposal or supporting statement is contrary to any of the Commission's proxy rules, including Rule 14a-9, which prohibits materially false or misleading statements in proxy soliciting materials.

35. The staff has taken the position that a shareholder proposal is excludable under Rule 14a-8(i)(3) if it is so vague and indefinite that "neither the stockholders voting on the proposal, nor the company in implementing the proposal (if adopted), would be able to determine with any reasonable certainty exactly what actions or measures the proposal requires." SLB 14B. See also Dyer v. SEC, 287 F.2d 773, 781 (8th Cir. 1961) ("[I]t appears to us that the proposal, as drafted and submitted to the company, is so vague and indefinite as to make it impossible for either the board of directors or the stockholders at large to comprehend precisely what the proposal would entail.").

36. Additionally, the staff has taken the position that a proposal is impermissibly vague and indefinite, and therefore excludable under Rule 14a-8(i)(3), where it is open to multiple interpretations, such that "any action ultimately taken by the [ c ]ompany upon

implementation could be significantly different from the actions envisioned by shareholders voting on the proposal." See Fuqua Industries, Inc. (Mar. 12, 1991).

37. Here, when the proposal addresses "each requirement. . . that calls for a greater than simple majority vote," it's not clear what is meant by simple majority. E.g., Would the proposal require elimination of provisions requiring a vote of a majority of shares outstanding? What about provisions requiring a vote of a majority of shares represented at the applicable meeting? Either of these could arguably be "greater than simple majority vote" if "simple majority vote" means a majority of shares actually voting on the matter, but it's not clear how (if at all) the company would be expected to address any such standards.

38. Second, in advocating for "a majority of the votes cast" OR "a simple majority in compliance with applicable laws" it's not clear (A) whether these are two different, alternative standards, and if so, how the company is supposed to choose between them; (B) whether "a majority of the votes cast" would include or exclude abstentions (which count as votes cast under some standards but not under others); and (C) if "a simple majority in compliance with applicable laws" is advocating for a standard based only on votes cast, or if a standard of "majority of shares outstanding" – which could certainly be described as a "simple majority" – would comply with the proposal.

39. Third, while the sentence beginning "If necessary…" is presumably intended to add clarity, it actually adds confusion by calling into question when the proponents would find it "necessary" to invoke this sentence – which still leaves open the question of whether the "majority of the votes cast" standard should, in the proponent's view, include or exclude abstentions.

40. Therefore, Chipotle is entitled to a declaratory judgment that it may exclude the Proposal from its proxy statement pursuant to Rule 14a-8(i)(3) because substantial portions of the supporting statement in the Proposal are impermissibly vague and indefinite.

### 4. Rule 14a-8 Permits Chipotle to Exclude from its Proxy Materials the Proposal Because the Support Statement is Materially Misleading.

41. Rule 14a-8(i)(3) permits the exclusion of a shareholder proposal "[i]f the proposal or supporting statement is contrary to any of the Commission's proxy rules, including [Rule] 14a-9, which prohibits materially false or misleading statements in proxy soliciting materials."

42. Rule 14a-9 provides that no solicitation shall be made by means of any proxy statement containing "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."

43. As noted in Staff Legal Bulletin No. 14B (Sept. 15, 2004) ("SLB 14B"), Rule 14a-8(i)(3) explicitly encompasses the supporting statement as well as the proposal as a whole.

44. Here, the supporting statement in Chevedden's Proposal is materially misleading. The staff of the SEC has made clear that references in a proposal to external sources can violate the SEC's proxy rules, including Rule 14a-9, and thus can support exclusion pursuant to Rule 14a-8(i)(3). For example, in Staff Legal Bulletin No. 14 (July 13, 2001) ("SLB 14"), the staff of the SEC explained that a proposal's reference to a website is excludable under Rule 14a-8(i)(3):

> 1. May a reference to a website address in the proposal or supporting statement be subject to exclusion under the rule?
>
> Yes. In some circumstances, we may concur in a company's view that it may exclude a website address under [R]ule 14a-8(i)(3) because information contained on the website may be materially false or misleading, irrelevant to the subject matter of the proposal or otherwise in contravention of the proxy rules.

Likewise, in Freeport-McMoRan Copper & Gold Inc. (avail. Feb. 22, 1999), the staff of the SEC concurred in the exclusion under Rule 14a-8(i)(3) of newspaper-article references contained in the proponent's supporting statement, on the basis that such references were false and misleading under Rule 14a-9.

45.     The staff of the SEC has recently confirmed that shareholder proponents must provide companies with source materials that are not publicly available in order to show that references to those materials do not violate Rule 14a-9.  Specifically, in Staff Legal Bulletin No. 14G ("SLB 14G"), the Staff reiterated its position in SLB 14 that website references are excludable under Rule 14a-8(i)(3) and noted that "if a proposal references a website that is not operational at the time the proposal is submitted, it will be impossible for a company or the staff to evaluate whether the website reference may be excluded." SLB 14G further explained that a reference to an external source that is not publicly available may be able to avoid exclusion "if the proponent, at the time the proposal is submitted, provides the company with the materials that are intended for publication on the website."  See also The Charles Schwab Corp. (avail. Mar. 7, 2012 (same); The Western Union Co. (avail. Mar. 7, 2012) (same).

46.     Here, the supporting statement for the Proposal contains various statements to information reported by GMI Ratings, an external source that his not publicly available.  Based on a review of the GMI Ratings website, it is impossible to determine what data source or type of report the Proposal purports to be quoting.  For example, the GMI Ratings website states that one of its products, the GMI Analyst service, is a web-based platform advertised as providing company-specific research, ratings and risk analytical tools with respect to topics such as "corporate environmental impacts," "litigation and financial-distress risk," and "peer-group analysis."  GMI Ratings states that the GMI Analyst website is subject to "daily and weekly

updates, quarterly ratings reviews and event-driven analysis" and claims that the website offers more comprehensive data than is provided by other GMI Ratings resources, such as GMI Analyst Compliance reports or ESG and AGR summaries. Thus, without being provided the source document(s) by the Defendants, Chipotle and the public have no way of verifying to what GMI Ratings source(s) the statements in the supporting statement to the Proposal are attributable, whether those statements are accurately repeated in the supporting statement or are taken out of context, or whether the GMI Ratings statements have been updated or are out of date.

47.     The statements in the supporting statement that are attributed to GMI Ratings are exactly the type of references that, in SLB 14 and SLB 14G, as well as a number of no-action letters, the SEC staff has determined to be excludable under Rule 14a-8(i)(3) and Rule 14a-9.

48.     Moreover, a number of the statements in the supporting statement are demonstrably false and misleading. For example, the supporting statement states that "Unvested equity pay would not lapse upon CEO termination." In actuality, as disclosed in each of Chipotle's annual meeting proxy statements since it became a public company, including on pages 49 and 50 of the proxy statement for Chipotle's 2013 annual meeting of shareholders, in the event of termination of the employment of a holder of outstanding equity compensation awards such awards would terminate, except in narrowly defined circumstances such as death, disability, or retirement (for which neither of Chipotle's Co-CEOs is currently eligible). As a result, this statement is demonstrably false and misleading, and renders the Proposal excludable under Rule 14a-8(i)(3).

49.     The supporting statement also asserts that Chipotle "lacked fair price provisions to help insure that all shareholders are treated fairly." A "fair price provision" generally refers to an anti-takeover measure designed to help companies defend against certain kinds of tender

offers, known as coercive, two-tiered tender offers. In this type of takeover, a potential acquirer will offer one price for the shares needed to gain control of a target company and then offer a lower price or other less favorable consideration for the remaining shares, thereby creating pressure for stockholders to tender their shares for the tender offer price, regardless of their value. Standard fair price provisions encourage a potential acquirer to negotiate with a company's board of directors by requiring the potential acquirer to pay a "fair price" for all shares as determined under a specified formulation, unless the acquirer's offer has satisfied specified board or stockholder approval requirements. However, notwithstanding the Proposal's assertion, Chipotle's Amended and Restated Certificate of Incorporation has, for as long as Chipotle has been a publicly-traded company, provided that Chipotle is governed by Section 203 of the Delaware General Corporation Law (DGCL). DGCL Section 203 contains provisions that provide the protections of a "fair price" provision. Section 203 provides, in general, that a transaction constituting a "business combination" within the meaning of Section 203 involving a person owning 15 percent or more of a company's voting stock (an interested stockholder), cannot be completed for a period of three years after the date the person became an interested stockholder unless (1) the company's Board of Directors approved either the business combination or the transaction that resulted in the person becoming an interested stockholder prior to such business combination or transaction, (2) upon consummation of the transaction that resulted in the person becoming an interested stockholder, that person owned at least 85 percent of the company's outstanding voting stock (excluding shares owned by persons who are directors and also officers of the company and shares owned by certain company employee benefit plans), or (3) the business combination was approved by the Board of Directors and by the affirmative vote of at least 662/3 percent of the company's outstanding voting stock not owned by the

interested stockholder. The company's election to be governed by Section 203 of the DGCL expressly contradicts Chevedden's assertion that Chipotle "lack[s] fair price provisions to help ensure that all shareholders are treated fairly," further rendering the Proposal false and misleading and therefore subject to exclusion under Rule 14a-8(i)(3).

50. Therefore, Chipotle is entitled to a declaratory judgment that it may exclude the Proposal from its proxy statement pursuant to Rule 14a-8(i)(3) because the supporting statement in the Proposal is materially misleading.

> **5. Rule 14a-8 Permits Chipotle to Exclude from its Proxy Materials the Proposal Because Substantial Portions of the Support Statement are Irrelevant to the Subject Matter of the Proposal.**

51. Rule 14a-8(i)(3) permits the exclusion of a shareholder proposal when "substantial portions of the supporting statement are irrelevant to a consideration of the subject matter of the proposal, such that there is a strong likelihood that a reasonable shareholder would be uncertain as to the matter on which she is being asked to vote."

52. The SEC repeatedly has taken the position that companies may exclude shareholder proposals where substantial portions of the supporting statement are irrelevant to a consideration of the subject matter of the proposal. SEC Staff Legal Bulletin 14B; *see, e.g.*, No-Action Letters to Burlington Northern Santa Fe Corp. (Jan. 31, 2001) (permitting exclusion of supporting statements involving racial and environmental policies as irrelevant to a proposal seeking stockholder approval of poison pills); Boise Cascade Corp. (Jan. 23, 2001) (permitting exclusion of supporting statements regarding the director election process, environmental and social issues and other topics unrelated to a proposal calling for separation of the CEO and chairman); Entergy Corp. (Feb. 14, 2007) (permitting exclusion of a proposal where, along with other misleading defects in the proposal, the supporting statement was irrelevant to the subject

matter of the proposal); Energy East Corp. (Feb. 12, 2007) (same); The Bear Stearns Cos. Inc. (Jan. 30, 2007) (same).

53.     Here, substantial portions of the supporting statement in the Proposal are irrelevant to a consideration of the subject matter of the Proposal.

54.     For instance, in addition to the false and misleading statement described above regarding the terms of Chipotle's equity compensation awards granted to its co-CEOs, the supporting statement also notes a small handful of compensation-related measures. The supporting statement also observes that Chipotle has not "incorporated links to environmental or social performance in its current incentive pay policies."  These statements would appear to suggest that the Proposal seeks to recommend changes to Chipotle's compensation program or the terms of its equity compensation awards.  But the Proposal does nothing of the sort and is not at all directed at compensation matters.

55.     The supporting statement also notes that Chipotle director Albert Baldocchi had "16-years long-tenure," that director John Charlesworth as well as Mr.Baldocchi had "more than 14-years long-tenure," and that directors PatrickFlynn and Darlene Friedman "each had more than 15-years long-tenure."  The supporting statement also observes that Mssrs. Charlesworth and Baldocchi comprise 67% of the Audit Committee of Chipotle's board, and that Mr. Flynn and Ms. Friedman comprise 67% of the "executive pay and nomination" committees (which presumably refer to the Compensation Committee and Nominating and Corporate Governance Committee). But the Proposal does not seek to replace directors, shorten director terms or alter the structure of the committees of Chipotle's board. As a result, these statements are irrelevant to the subject matter of the Proposal.

56. And most notably, the supporting statement complains (erroneously) that Chipotle does not have a "fair price provision." Not only does the proposal not seek to encourage adoption of a fair price provision (which Chipotle has already adopted), but adoption of a such a provision, by the most common formulation, would result in Chipotle adopting , in practice, a supermajority voting provision – the very type of provision that the proposal asks shareholders to vote against. The inclusion of this statement, irrelevant as it is to the subject matter of the Proposal, is at best, confusing, and at worst, misleading, to shareholders if they were to be asked to make a voting decision on the Proposal.

57. Therefore, Chipotle is entitled to a declaratory judgment that it may exclude the Proposal from its proxy statement pursuant to Rule 14a-8(i)(3) because substantial portions of the supporting statement in the Proposal are irrelevant to a consideration of the subject matter of the Proposal.

## DECLARATORY JUDGMENT

58. In accordance with 28 U.S.C. § 2201, an actual controversy exists between Chipotle and Defendants.

59. For the reasons set forth above, Defendants have not complied with the requirements of Rule 14a-8. Rule 14a-8(f) provides that, with respect to certain procedural deficiencies, "[t]he company may exclude your proposal, but only after it has notified you of the problem, and you have failed adequately to correct it."

60. Chipotle notified Defendants of the procedural deficiencies in the Proposal, as required by Rule 14a-8(f), through its First Deficiency Notice and Second Deficiency Notice.

61. To date, such procedural deficiencies, described in detail above, have not been remedied, and regardless, the additional deficiencies described in detail above also provide grounds for exclusion of the Proposal under Rule 14a-8(i).

62. Chipotle must file its definitive proxy statement no later than March 25, 2014. Chipotle's annual meeting is scheduled to occur on May 15, 2014, and the final proxy materials for such meeting must be prepared, assembled, filed and mailed to shareholders at least 40 days in advance of that meeting. .

63. Given the time required to prepare, assemble, and file the necessary proxy materials, Chipotle must know as soon as is practicable whether it may exclude the Proposal from its proxy materials and, accordingly, Chipotle seeks from this Court a declaratory judgment to that effect.

## RELIEF SOUGHT

64. WHEREFORE, Chipotle respectfully requests that this Court declare that Chipotle properly may exclude the Proposal from Chipotle's proxy materials under Rule 14a-8. Chipotle also requests judgment against Defendants for its costs, including attorney fees and expenses, and such other and further relief as the Court may deem just and proper.

Dated: January 2, 2014.

Respectfully submitted,

*/s/ Scott L. Evans*
Scott L. Evans, #25475
Caleb Meyer, #34292
Michael S. Toll, #44087
Messner Reeves LLP
1430 Wynkoop, Suite 300
Denver, CO 80202
Phone: 303.623.1800
Fax:    303.623.0552
sevans@messner.com

                                              cmeyer@messner.com
                                              mtoll@messner.com
                                              *Attorneys for Plaintiff Chipotle Mexican Grill, Inc.*