FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
FEB 26 2014
JEFFREY P. COLWELL
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO (DENVER)

| | |
|---|---|
| CHIPOTLE MEXICAN GRILL, INC., § | |
| § | |
| Plaintiff § | |
| § | |
| v. § | Civil Action 1:14-cv-00018-WJM-KMT |
| § | |
| JOHN CHEVEDDEN, § | |
| JAMES McRITCHIE, AND § | |
| MYRA K. YOUNG § | |
| § | |
| Defendants § | |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

SEC Rule 14a-8, 17 C.F.R. § 240.14a-8, "addresses when a company must include a shareholder's proposal in its proxy statement and identify the proposal in its form of proxy when the company holds an annual or special meeting of shareholders" and lists the specific circumstances in which the company is permitted to exclude a proposal, "but only after submitting its reasons to the Commission."

If a company receives a shareholder proposal and believes that such circumstances exist, it can seek to exclude the proposal from its proxy materials by requesting a "no-action" letter from the SEC staff. If the staff concurs with the company's position, it will generally issue a letter stating that it will not recommend that the Commission take any enforcement action if the company excludes the proposal from its proxy materials. If the staff disagrees with the company's position, it will so advise the company. In either case, the staff's response to a request for a no-action letter is an advisory opinion. However, it is virtually certain that the SEC will not bring an enforcement action against a company that has received a no-action letter.

1

Over the years, the staff of the SEC has responded to thousands of requests for a no-action letter from companies seeking to exclude shareholder proposals from their proxy materials. On the other hand, to the Defendant's knowledge, until just a few years ago, no company had ever bypassed the SEC and sued a shareholder who submitted a proposal for a declaratory judgment to exclude it from its proxy materials.

Defendant Chevedden is a small investor who has personally submitted and aided others to submit many proposals to publicly registered companies. It is not uncommon for a company to request no action assurance from the SEC staff to exclude one of his proposals from its proxy materials. Sometimes, the staff has sided with the company and sometimes it has sided with Chevedden. None of the Defendants has never threatened or sought to compel a company to include a proposal in its proxy materials, whether or not it received no action assurance from the SEC that it could exclude it. Nor have any of them done so with respect to the proposal at issue. To erase any doubt, on February 24, 2014, the Defendants irrevocably promise Chipotle's counsel in writing that they will not (1) sue Chipotle regarding its decision, or (2) attempt to present their proposal at the annual meeting, if Chipotle excludes their proposal from its proxy materials.

Between 2011 and 2013, four lawsuits similar to this one were filed against Chevedden,[1] but <u>not</u> the SEC, even though the SEC has statutory authority to enforce the federal securities laws and regulations including Rule 14a-8.[2] Because Chevedden does not have

---

[1] As with this lawsuit, some of the lawsuits included other small investors with whom Chevedden has worked with as defendants.

[2] Section 21 of the Act, in relevant part, states: (1) "Whenever it shall appear to the Commission that any person is engaged or is about to engage in acts or practices constituting a violation of any provision of this title, the rules or regulations thereunder...it may in its discretion bring an action...to enjoin such acts or practices;" and (2) "Whenever it shall appear to the Commission that any person has violated any provision of this title, the rules or regulations thereunder...the Commission may bring an action in a United States district court to seek, and the court shall have jurisdiction to impose, upon a proper showing, a civil penalty to be paid by the person who committed such violation."

a large monetary stake in these lawsuits, it has not been economical to hire an attorney. He therefore has represented himself pro se, which disadvantaged him because the companies suing him were represented by major law firms.

The corporate bar has taken notice of this opportunity to create a mismatch in legal firepower between a large publicly traded company and a small shareholder it would like to crush because he or she has submitted a proposal that management opposes. Consequently, the "let's do an end run around the SEC and sue Chevedden" strategy has attracted corporate lawyers representing major corporations who have accelerated the pace, suing Chevedden from sea to shining sea and drowning him in a barrage of lawsuits. In January 2014 alone, in wolf pack fashion, four different public companies sued Chevedden in four different district courts, including this one, which may be a record number of lawsuits in one month brought by different large corporations against one small individual defendant.

The overriding goal of these lawsuits is to send a subliminal message to all small shareholders that might be considering submitting a proposal to any public company: "WARNING: SUBMIT A RULE 14A-8 PROPOSAL AT YOUR OWN RISK!" If this trend continues, it will surely diminish the effectiveness of Rule 14a-8 as a means to promote shareholder democracy. As a result of these lawsuits, any small shareholder considering submitting a Rule 14a-8 proposal to a company now has to factor in the risk of becoming the target of a lawsuit similar to this one. And, that risk is amplified by the fear that he or she may have to pay the company's attorney fees, as Chipotle is asking this Court to order the Defendant to do.

In lieu of requesting no action assurance from the SEC to exclude the Defendants' proposal, Chipotle has decided to sue Chevedden as the SEC's weak proxy. Chipotle is effectively forum shopping, hoping that, without the benefit of hearing from the SEC, this Court

will be more sympathetic than the SEC staff would be to its position and less likely than the staff to give a small shareholder a fair shake.

Chipotle has moved for summary judgment, asking this Court to issue an order declaring that it may exclude the Defendants' Rule 14a-8 proposal from its proxy materials for its 2014 annual meeting. The Court should exercise its discretion and deny the motion.

## ARGUMENT

"Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). "The federal court may have to consider whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc." *Brillhart v. Excess Ins. Co. of America*, 316 U. S. 491 (1942). In *Eccles v. Peoples Bank of Lakewood Village*, 333 U.S. 426, 431 (1948), the Supreme Court set forth general standards for how a court should use its discretion:

> A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest. *Brillhart v. Excess Insurance Co.*, 316 U.S. 491; *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 297-98; H.R. Rep. No. 1264, 73rd Cong., 2d Sess., p. 2; Borchard, Declaratory Judgments (2d ed. 1941) pp. 312-14. It is always the duty of a court of equity to strike a proper balance between the needs of the plaintiff and the consequences of giving the desired relief. Especially where governmental action is involved, courts should not intervene unless the need for equitable relief is clear, not remote or speculative.

For the following reasons, this Court should exercise its discretion and deny Chipotle's motion for summary judgment.

## I. THE DESIRED RELIEF WOULD NOT RESULT IN ANY LEGAL CONSEQUENCES.

The Defendants have not threatened to take any action against Chipotle regardless of what Chipotle does. In fact, they have irrevocably promised not to sue Chipotle if it excludes

their proposal from its proxy materials. Although the parties disagree as to whether the Defendants have complied with Rule 14a-8, the dispute is solely an academic one.[3] The fact that the parties disagree about this issue is not sufficient to constitute a cognizable injury in fact. "No matter how vehemently the parties...dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Already, LLC v. Nike, Inc.* 133 S. Ct. 721 (2013) (citation omitted). In sum, the declaratory judgment Chipotle seeks will have no effect on the Defendants' behavior. As a result, it would be a prohibited advisory opinion.

Chipotle also claims that, absent a declaratory judgment, if it acts as it wishes, it might be subject to potential litigation brought by another shareholder or by the SEC. But, both of those possibilities are remote and speculative.[4] Chipotle has not provided any evidence to the contrary. Moreover, an order issued by this Court could not preclude the SEC, an absent party unable to articulate its interests to the Court, from bringing an enforcement action.

## II. THE DESIRED RELIEF IS NOT IN THE PUBLIC INTEREST.

The purpose of Rule 14a-8 is to advance shareholder democracy.[5] The "let's do an end run around the SEC and sue Chevedden" strategy undermines that goal by its chilling effect on any small shareholder that would otherwise consider submitting a Rule 14a-8 proposal. Whether or not a particular proposal complies with the rule, a small shareholder now has to fear a lawsuit from a large public company with virtually unlimited resources. Since it makes no economic

---

[3] "There ain't no good guys, there ain't no bad guys. There's only you and me and we just disagree." *We Just Disagree* song sung by Dave Mason

[4] To the Defendants' knowledge, no lawsuit by a shareholder other than the proponent has ever been brought against a company that determined to exclude a Rule 14a-8 proposal from its proxy materials. Also, in the entire seventy-two year history of Rule 14a-8 and its predecessor rule, thousands of shareholder proposals have been submitted to companies. Yet, the SEC has brought just one enforcement action – and that was initiated sixty-eight years ago. See *SEC v. TransAmerica Corp.*, 163 F.2d 511 (3d. Cir. 1947). Thus, Chipotle's purported fear of a lawsuit from a non-party if it excludes the Defendants' proposal from its proxy materials is unwarranted.

[5] See *Medical Committee for Human Rights v. SEC*, 139 U. S. App. D. C. 226 (1970) ("It is obvious to the point of banality to restate the proposition that Congress intended by its enactment of section 14 of the Securities Exchange Act of 1934 to give true vitality to the concept of corporate democracy.")

5

sense for a small shareholder to engage an attorney to defend such a lawsuit, he or she may well be bludgeoned into withdrawing any proposal management opposes, even if the proposal is completely proper and would be supported by the company's shareholders. In exercising its discretion, this Court should give considerable weight to the *in terrorem* effect of lawsuits such as this one.

In addition, courts may well become inundated with these sorts of forum shopping lawsuits even though the issues can be handled much more efficiently by the SEC staff vetting them. If the company disagrees with the staff, it would then have the right to seek a judicial resolution of the dispute.

Chipotle claims the Defendants have not satisfied the ownership requirements of Rule 14a-8(b). Apple Inc. recently made the same argument to the SEC staff and on December 17, 2013, the staff denied Apple's request for no action relief. (See http://www.sec.gov/divisions/corpfin/cf-noaction/14a-8/2013/jamesmcritchiechevedden121713-14a8z.pdf). Apple then requested that the Commission review the matter and staff denied Apple's request. (See http://www.sec.gov/divisions/corpfin/cf-noaction/14a-8/2014/jamesmcritchechveddenapplerecon010814-14a8.pdf). This Court should not issue a ruling on this matter in a case in which the Commission has taken a position contrary to Chipotle's and has not been joined.

As far as Chipotle's claim that the Defendant's proposal's supporting statement contain false, misleading, or irrelevant statements, these are standard pretextual allegations to prevent shareholders from voting on a proposal management opposes. In fact, in seeking concurrence from the SEC staff of their intent to exclude proposals from their proxy soliciting materials, companies routinely allege that a proposal and/or its supporting statement is false, misleading, vague or irrelevant. Often, the SEC staff disagrees that the proposal may be excluded from the company's proxy materials. In this instance, Chipotle apparently feared the SEC staff would

6

disagree with its position so it sued the Defendants to avoid that possibility. It is not in the public interest to decide this matter without soliciting the SEC's views.

Since these allegations involve subjective assessments of the merits of the Defendants' proposal, the appropriate remedy is more speech, not suppression of speech. That is, management can oppose the Defendants' proposal in its proxy materials and explain to shareholders the reasons why they should not vote in favor of it. Barring shareholders from voting on a proposal, which is really Chipotle's goal, is a "remedy" that does more harm than good, because it undermines the purpose of Rule 14a-8, i.e., to promote shareholder democracy. Thus, it is not in the public interest.

## CONCLUSION

In sum, abusive lawsuits like this one against small shareholders with limited resources (1) undermine shareholder democracy, which Rule 14a-8 is designed to promote and (1) place an unnecessary strain on the federal judiciary. As such, they are not in the public interest. Therefore, this Court should use its discretion to deny the requested relief.

In denying declaratory relief to the plaintiff, the *Eccles* Court noted: "It appears that the respondent could, if it wished, protect itself from the loss of its independence through adoption of by-laws forbidding any further sale or pledge of its shares to Transamerica or its affiliates." Similarly, Chipotle could, if it wished to protect itself from an SEC enforcement action, have advised the SEC staff why it believes it is entitled to exclude the Defendants' proposal from its proxy materials and asked the staff to concur with its arguments. Instead, Chipotle adopted the "let's do an end run around the SEC and sue Chevedden" strategy. Why would Chipotle want to pursue litigation instead of seeking no action assurance when the former is so much more expensive? Clearly, Chipotle does not want to tangle with the SEC and has sued the Defendants instead because it rightly perceives them as a weaker opponent. This Court should see through Chipotle's cynical strategy of forum shopping to keep the SEC from weighing in and use the

7

Defendants as its weak proxy. This bullying of small shareholders to chill them from submitting proposals should cause this Court to use its discretion to deny Chipotle declaratory relief. It should tell Chipotle to pick on someone its own size and that if it wants to exclude the Defendants' proposal and insulate itself from an SEC enforcement action, it should sue the SEC.

Dated: February 24, 2014

Respectfully submitted

John Chevedden
Pro se Defendant
2215 Nelson Ave. No. 205
Redondo Beach, Calif. 90278
PH: 310-371-7872
olmsted7p@earthlink.net

James McRitchie
9295 Yorkship Court
Elk Grove. CA 95758

Myra K. Young
9295 Yorkship Court
Elk Grove. CA 95758

Certificate of Service

I certify that on February 24, 2014 this motion was sent overnight to the Clerk of the Court. A copy of this motion is also being provided to Scott L. Evans, Plaintiff's attorney.

John Chevedden

James McRitchie

Myra K. Young